**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

       **Plaintiff(s),**     **CASE NUMBER: 05-80494
HONORABLE VICTORIA A. ROBERTS**

**v.**

**ROBERT R. MAPP,**

       **Defendant(s).**
_____/

**ORDER**

**I. INTRODUCTION**

  Defendant Robert R. Mapp was charged in a one-count indictment with felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1)(a).  Defendant pled guilty to the charge pursuant to a Rule 11 Plea Agreement.

  In the Plea Agreement, the parties agreed on a criminal history category of III and an offense level of 17.  Therefore, they agreed that Defendant's sentencing range was 30-37 months.  However, the parties' agreement was based on the erroneous presumption that Defendant only had two prior convictions.  In fact, the probation department found that Defendant actually has four prior convictions for which points must be assessed.  Therefore, the probation department finds that Defendant's criminal history category is V, his offense level is 23 and his sentencing Guideline range is 84 to 105 months.

  The parties agree that the probation department's calculations are accurate.

1

And, under the terms of the Plea Agreement, they also agree that the probation department's calculations govern, since the calculations in the Plea Agreement were based upon an erroneous estimation of Defendant's criminal history.

The Government contends that a sentence within the Guideline range would be reasonable. Defendant asks the Court to take a number of factors into consideration in fashioning a reasonable sentence below the Guideline range. Notably though, without argument, Defendant cites a number of cases which indicate that a court may impose a sentence below the Guideline range even if the defendant is prohibited by the terms of the plea agreement from requesting a lower sentence. *See United States v Williams*, 432 F.3d 621 (6th Cir. 2005); *United States v Ekhator*, 17 F.3d 53 (2nd Cir. 1994); *United States v Williams*, 65 F.3d 301 (2nd Cir. 1995). The purpose of these citations, however, is not clear.

Defendant's Plea Agreement states that neither Defendant nor the Government may take a position regarding the applicable Guidelines that differs from what is reflected in the attached worksheets, except to the extent necessary to aid the Court's determination of whether the criminal history category or offense level should be higher than agreed upon:

> Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections a) and b) above.

Plea Agreement at ¶2(B). However, if this language is accorded its plain meaning, it only prohibits Defendant and the Government from disputing the Guideline range, not from advocating for a departure from the applicable Guidelines or a sentence outside

that range.

In any event, *Booker*[1] explicitly authorizes the Court to impose a sentence that it deems reasonable in light of the Guideline range and §3553(a) factors.  This authority implicitly includes the discretion to impose a sentence below the Guideline range as long as the sentence is reasonable and the Court's rationale is clearly articulated, even if Defendant does not request a lower sentence.  *See Williams*, 432 F.3d at 623-624 (affirming the district court's sentence below the Guideline range, even though defendant was prohibited from requesting a non-Guidelines sentence).

## II.    APPLICABLE LAW AND ANALYSIS

### A.    Court's Obligations Post-*Booker*

Pre-*Booker*, the Sentencing Guidelines limited the type of factors a district court could consider in fashioning an appropriate sentence and mandated the extent to which a factor had to be present to warrant departure.  *See United States v Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998).  *Booker*, however, rendered the Guidelines advisory, requiring only that courts consider the applicable Guideline range and the statutory concerns set forth at 18 U.S.C. §3553(a) and impose a sentence that takes into account the purposes set forth therein.  *Booker,* 125 S.Ct. at 757.  Therefore, it is now within the district court's discretion to decide what issues to consider and the weight they should be given, subject to review only for reasonableness.  *Id* at 765; *United States v Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert den.,* 126 S.Ct. 1110 (2006).

### B.    Downward Departures

---

[1] *United States v Booker,* 125 S.Ct. 738 (2005).

3

Since the Court must still consider the applicable Guideline range, the concept of downward departures is not obsolete after *Booker,* because a district court must still consider whether a downward departure is warranted as part of its consideration of the appropriate Guideline range:

> In section 3553(a), there are numerous factors for a court to consider, and under *Booker's* remedial holding, the Sentencing Guideline range is one of those factors. . . . To effectuate the Supreme Court's mandate, district courts are still required to *consider* the appropriate Guideline sentencing range. Within this Guideline calculation is the determination of whether a [U.S.S.G.] Chapter 5 departure is appropriate.

*United States v  McBride*, 434 F.3d 470, 475-476 (6th Cir. 2006).

Defendant makes two assertions which the Court construes as requests for downward departure.[2]

### i.    Criminal History Overstated

Defendant contends that a Guideline sentence would be greater than necessary to impose just punishment because:  1) he only has one conviction after 1994; 2) "since his last conviction in which he served time in prison[,] more than eleven (11) years elapsed before he was convicted on the instant offense"; and 3) the Court "can see" that his prior incarcerations have resulted in some rehabilitation which empowered him to become a more productive and mature citizen.  The Court presumes that Defendant is asserting, pursuant to U.S.S.G. §4A1.3(b)(1), that his criminal history category overstates the seriousness of his criminal history since he was young at the time of his

---

[2]In many instances Defendant did not clearly indicate in his Sentencing Memorandum whether he was requesting downward departure or consideration under §3553(a).  In those instances, the Court construed the nature of Defendant's request from the cases cited and/or the arguments asserted.

4

prior convictions and they are over ten years old.  The Court acknowledges that

Defendant was incarcerated for seven of the 11 years that he claims he was crime free.

U.S.S.G. §4A1.3(b)(1) states:

**(b)** Downward Departures.--

**(1)**    Standard for Downward Departure.--If reliable
information indicates that the defendant's criminal
history category substantially over-represents the
seriousness of the defendant's criminal history or the
likelihood that the defendant will commit other crimes, a
downward departure may be warranted.

Defendant has a total of 12 criminal history points for four drug related convictions

between 1992 and 1994, when he was between the ages of 17 and 19.

Pre-*Booker*, age was typically not relevant to a court's decision regarding

whether to depart.  *See* U.S.S.G. §5H1.1; *United States v Brown*, 985 F.2d 478, 482 (9th

Cir. 1993); *United States v Brown*, 903 F.2d 540, 544 (8th Cir. 1990); *United States v*

*Smith*, 909 F.2d 1164, 1169 (8th Cir. 1990).  And, the age of one's convictions standing

alone did not warrant a downward departure.  *United States v Fletcher*, 15 F.3d 553,

557 (6th Cir. 1994).  However, courts considered both factors relevant when deciding

whether a defendant's criminal history score overstated the seriousness of a

defendant's criminal record or the likelihood of recidivism.  *Fletcher*, 15 F.3d at 557;

*Brown*, 985 F.2d at 482; *Brown*, 903 F.2d at 544; *Smith*, 909 F.2d at 1169; *United*

*States v Hammond*, 240 F.Supp. 2d 872, 877-878 (E.D. Wis. 2003).

Post-*Booker*, the Sixth Circuit in *United States v Williams*, 432 F.3d 621 (6th Cir.

2005), affirmed a district court's two-level reduction in a defendant's criminal history

category pursuant to §4A1.3.  The *Williams* defendant's criminal history category was V

and his offense level was 17, which placed him in a Guideline range of 46-57 months.
The district court based its decision to grant Defendant a two-level departure in his
criminal history category on the fact that most of his criminal history points stemmed
from conduct which occurred over ten years before the offense for which he was being
sentenced.[3]   The Sixth Circuit affirmed, asserting that it was permissible for the district
court to rely on the policy statement in §4A1.3, in addition to the relevant §3553(a)
factors.

Here, the Court agrees that Defendant's criminal history category overstates the
seriousness of his criminal history.   Defendant was 30 years old at the time of this
offense (in May 2005).  He has not been convicted since 1994.  All of his convictions
occurred during a two year window when he was in his late teens, and they each
involved relatively small amounts of narcotics.  Therefore, the Court will depart
downward two levels to criminal history category III.  By doing this, Defendant's offense
level is also affected.  The Court will only hold Defendant responsible for one controlled
substance offense under U.S.S.G. §2K2.1(a)(4)(A).  Therefore, Defendant's adjusted
base offense level is 20.  Two points are added for the number of firearms under
U.S.S.G. §2K2.1(b)(1)(A) and three points are deducted for acceptance of
responsibility.  As a result, Defendant has an adjusted criminal history category of III
and an offense level 19, which places him in a sentencing range of 37-46 months.

### ii.    Rehabilitation or "Boot Camp"

Defendant (impliedly) asserts that a lesser sentence will aid in his rehabilitation.

---

[3]The *Williams* Court also affirmed the district court's two-level reduction of
defendant's offense level on other grounds.

6

Alternatively, Defendant requests downward departure to a level that will enable him to attend "boot camp."  The Court declines to depart on either ground.

First, Defendant cites cases where courts departed downward in order to aid in a defendant's rehabilitation.  *See United States v Pallowick*, 364 F.Supp.2d 923 (E.D. Wis. 2005); *United States v Jones*, 158 F.3d 492 (10th Cir. 1998).  However, Defendant did not offer any argument in support of his apparent request that this Court do the same for him, and the cases cited are distinguishable.

In *Pallowick*, defendant was convicted of six armed bank robberies.  The court downward departed from the Guideline range of 70-87 months--to 46 months--for a number of reasons: 1) defendant was not actually armed, no one was hurt and defendant did not make any direct threats; 2) defendant's only prior conviction was for a burglary committed shortly before the robberies; 3) like several members of his immediate family, defendant had a severe mental illness of major depressive and anxiety disorder, which prevented him from working or pursuing an education; 4) he abused drugs and alcohol to cope with his illness; 5) after his arrest, he completed in-patient treatment, enrolled in counseling and took medication which improved his condition and allowed him to hold a job; and 6) he was not considered dangerous or likely to re-offend as long as he remained in treatment.  The court found that a lengthy prison sentence would not aid the defendant's rehabilitation and may have hindered the progress he made in counseling.

In *Jones*, defendant pled guilty to two firearm offenses.  The court departed three levels (from a Guideline range of 12 to 18 months) and sentenced defendant to 6 months home confinement and 3 probation.  The court cited 11 factors which warranted

7

downward departure, including the negative effect incarceration would have on the

defendant's rehabilitative counseling.

Neither *Pallowick* nor *Jones* is persuasive. There are no extenuating

circumstances here which are comparable to those in *Pallowick*. And, Defendant does

not identify any reason why he will not benefit from the rehabilitative counseling offered

by the Bureau of Prisons ("BOP").

Defendant's alternate request is for a departure which will enable him to attend

"boot camp." Presumably, Defendant is referring to the "shock incarceration program"

set forth at 18 U.S.C. §4046:

> **(a)** The Bureau of Prisons may place in a shock incarceration
> program any person who is sentenced to a term of imprisonment of
> more than 12, but not more than 30, months, if such person consents
> to that placement.
>
> **(b)** For such initial portion of the term of imprisonment as the Bureau
> of Prisons may determine, not to exceed 6 months, an inmate in the
> shock incarceration program shall be required to--
>
>> **(1)** adhere to a highly regimented schedule that provides the
>> strict discipline, physical training, hard labor, drill, and
>> ceremony characteristic of military basic training; and
>>
>> **(2)** participate in appropriate job training and educational
>> programs (including literacy programs) and drug, alcohol, and
>> other counseling programs.
>
> **(c)** An inmate who in the judgment of the Director of the Bureau of
> Prisons has successfully completed the required period of shock
> incarceration shall remain in the custody of the Bureau for such
> period (not to exceed the remainder of the prison term otherwise
> required by law to be served by that inmate), and under such
> conditions, as the Bureau deems appropriate.

However, the Court is advised by the probation department (Christine Fush) that the

BOP does not offer this program any longer. Even if it was available, Ms. Fush further

indicates that Defendant would likely be ineligible for the program because his offense involves firearms.

Defendant's request for downward departure either to facilitate his rehabilitation or to allow him to attend "boot camp" is denied.

### C.    18 U.S.C. §3553(a)

The Court considers the balance of factors Defendant lists under the appropriate sections of §3553(a).

### i.    Domestic Violence

Defendant had a troubled home life as a youth.  His parents never married and often verbally and physically abused each other.  At the age of five, he says that he often hid in a closet or outside with friends or strangers for hours.  Both parents abused drugs and alcohol in his presence, and, according to the Presentence Investigation Report ("PSIR") , they had interactions with law enforcement which resulted in criminal convictions.  Defendant's grandmother became his caretaker in 1980 (when he was five) and raised him to adulthood.  Defendant told Ms. Fush that he "felt spoiled" by his grandmother and that he had adequate food and clothing while under her care.  *See* PSIR at ¶48.  Presumably referring to his parents, Defendant nevertheless says that "without the requisite love, familial support and educational guidance he was unable to overcome the will of the street."  Def. br. at p. 15.

In another section of his brief, Defendant makes a related assertion but fails to offer any argument.  He simply cites cases which indicate that poverty, lack of education and lack of guidance as a youth are relevant in assessing a defendant's culpability.

9

Pre-*Booker*, "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing" were not considered relevant grounds for downward departure.  U.S.S.G. §5H1.12.  Post-*Booker*, however, Defendant is correct that his childhood and lack of education are relevant under §3553(a)(1) with regard to Defendant's "history and characteristics."  The Court will factor Defendant's upbringing into its sentencing decision.

### ii.    Disparity Between Federal and State Sentences

18 U.S.C. §3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Defendant presented documents indicating that his sentencing range would be 9-46 months if the same charges were brought in state court, as opposed to the 84-105 months he faces in this Court.  Defendant asks the Court to consider this disparity under (a)(6).

It does not appear that the Sixth Circuit has addressed whether or not it is appropriate to consider disparities between federal and state sentences under (a)(6).  Pre-*Booker*, many circuits held that the disparity was an improper ground for departure.  *See United States v Snyder*, 136 F.3d 65, 70 (1st Cir. 1998); *United States v Haynes*, 985 F.2d 65, 69-70 (2nd Cir. 1993); *United States v Deitz*, 991 F.2d 443, 448 (8th Cir. 1993); *United States v Williams*, 282 F.3d 679, 681-682 (9th Cir. 2002); *United States v Searcy,* 132 F.3d 1421, 1422 (11th Cir. 1998).  The courts reasoned, *inter alia*, that such comparisons would *create* a disparity in federal sentences because of the variances in state law.

Post-*Booker*, many courts continue to subscribe to that viewpoint.  *See United*

10

*States v Clark*, 434 F.3d 684 (4th Cir. 2006), *cert den.,* 126 S.Ct. 2054 (2006); *United*

*States v Jeremiah*, 446 F.3d 805 (8th Cir. 2006); *United States v Branson*, 463 F.3d

1110 (10th Cir. 2006).  However, it is an open question in the First Circuit and at least

two district courts considered the disparity in fashioning a sentence.  *See United States*

*v Wilkerson*, 411 F.3d 1 (1st Cir. 2005); *United States v Bariek*, 2005 W.L. 2334682

(E.D. Va. 2005) **[Notably though, *Bariek* is in the Fourth Circuit and was decided**

**before *Clark, supra*.  It was not overruled by *Clark*.  But, it is perhaps less**

**persuasive because the *Bariek* court may have been compelled to rule differently**

**under *Clark*. ]**; *United States v Lucania*, 379 F.Supp.2d 288 (E.D.N.Y. 2005).[4]

In *Wilkerson*, the defendant was sentenced prior to *Booker*.  The district court

imposed the lowest available sentence under the Guidelines.  The court repeatedly

expressed concern about the disparate treatment between federal and state sentences

in similar cases, but said that the Guidelines precluded him from taking that disparity

into account.  On appeal, the *Wilkerson* Court noted that the district court's assertion

that he could not take the federal-state disparity into account was based on the First

Circuit's pre-*Booker* precedent to that effect.  Because the district court's remarks about

the disparity (and about the defendant's "horrible young life") suggested that the district

_____

[4]Defendant also cites *United States v Moreland*, 366 F.Supp.2d 416 (S.D. W. Va. 2005), in which the court factored, among other things, the disparity between state and federal sentences into the defendant's sentence.  The court sentenced the defendant to the mandatory minimum sentence of 10 years, rather than the 30 years to life sentence suggested by the Guidelines for a career offender.  On appeal, however, the Fourth Circuit found that the circumstances of the case were not sufficiently compelling to warrant the court's substantial variance from the Guidelines.  437 F.3d 424 (4th Cir. 2006), *cert den.,* 126 S.Ct. 2054 (2006).  The Fourth Circuit vacated the district court's sentence and remanded the case for a sentence of not less than 20 years.

court may have given a different sentence under an advisory Guidelines regime, the *Wilkerson* Court remanded the case for resentencing. However, the Court declined to decide whether federal and state sentencing disparities may be considered under the post-*Booker* advisory Guidelines. 41 F.3d at 10.

In *Bariek*, the defendant's sentencing range was 37 to 46 months for operating an unlicensed money transmitting business. But, in state court he would have only faced a misdemeanor with a potential sentence of up to one year. Because the court found that defendant's conduct was not the type the federal statute was primarily directed towards, it found that "a significant sentencing disparity with what the defendant would face in state court would thus be unwarranted." 2005 W.L. 2334682 at *4.

In *Lucania*, the court considered federal and state disparities as grounds to impose a higher sentence for firearms trafficking than the advisory Guidelines suggested. The state court imposed higher penalties for the same offense and the court felt that greater harm was caused by the defendant's trafficking in the state of New York than would have been caused in other localities.

*Wilkerson, Lucania* and *Bariek* demonstrate that, in the circuits where the federal-state disparity is considered, it is a fact-specific decision. The Court finds that it is appropriate to weigh the state and federal sentencing disparity based on the facts and circumstances presented here.

This case was initiated by state authorities and could have proceeded through the state system. But, after Plaintiff was arrested, the Wayne County Prosecutor elected to turn prosecution over to federal authorities pursuant to the Project Safe

12

Neighborhoods ("PSN") crime reduction initiative.[5]  It is within the Wayne County

Prosecutor's discretion to decide which cases to refer, although the methodology for the

decision is not apparent.  One significant advantage of the PSN for state authorities is

the significantly higher sentences available under the federal Guidelines.

Because of the state and federal collaboration under the PSN and the fact that

no unique federal interests are implicated in this particular case, the Court will consider

the federal-state disparity.  Defendant has demonstrated that similarly situated

defendants who, at the discretion of state authorities, are not referred for federal

prosecution would face significantly lower sentences for the same offense.  The Court

will take this into account in its sentencing decision.

### iii.    Cooperation

After entering his plea, Defendant agreed to provide substantial assistance to the

Government by sharing information he has regarding known criminal activities or

suspects, in exchange for the recommendation for a lower sentence pursuant to

U.S.S.G. §5K1.1.  Defendant presented evidence that he provided information

concerning current criminal activity in his neighborhood.  However, the Government has

not filed a §5K1.1 motion and it indicates that it will not do so because the information

---

[5]"PSN is a Department of Justice initiative that encourages state and federal law enforcement, as well as other segments of the community, to collaborate in the reduction of 'gun crime in America.'  Prosecutions under the PSN program, which occur at the federal level, typically arise by way of referrals from state law enforcement. According to the PSN web site, the U.S. Attorney in each participating federal district must have a strategic plan to attack gun crime, must constantly evaluate the plan's effectiveness, and must report semi-annually to the Department of Justice on several aspects of the district's PSN implementation efforts."  *United States v Thorpe*, 471 F.3d 652, 655 (6th Cir. 2006).

has not resulted in any indictments, arrests, or prosecutions.  The prosecutor did indicate a Rule 35 motion might be appropriate.  Based on this, the Court declines to consider cooperation under §3553(a).

### iv.    Needed Medical Care/Extraordinary Physical Impairment

Defendant was diagnosed with diabetes in May 2006.  He is taking medicine to stabilize his condition.  But, he has had difficulty adjusting to the strict time requirements of the medications and adhering to a healthy, regular diet.  He has lost over 40 pounds since his diagnosis.  Therefore, Defendant asks the Court to consider his medical needs in fashioning a sentence.

*Pre-Booker*, a defendant's physical condition was not deemed relevant to whether a departure was warranted unless the defendant's condition constituted an extraordinary physical impairment.  U.S.S.G. §5H1.4.  However, under §3553(a)(2)(D), the Court must ensure that the sentence imposed provides a defendant with needed medical care.

Defendant cites *United States v Nellum*, 2005 W.L. 300073 (N.D. Ind. 2005), in which the Court imposed a sentence below the Guideline range based on a number of §3553(a) factors, including the defendant's serious medical problems.  He suffered from high blood pressure and a blocked prostate, and he suffered a heart attack while in custody.  Although the defendant's Guideline range was 168 to 210 months, the court sentenced him to 108 months.

Defendant also cites *United States v Carmona-Rodriguez*, 2005 W.L. 840464 (S.D.N.Y. 2005)*,* where the defendant suffered from high blood pressure, diabetes and was under treatment for anxiety and depression.  The defendant's Guideline range was

14

46 to 57 months.  However, the court balanced the §3553(a) factors and found that a non-Guideline sentence of 30 months was warranted in part because of defendant's need for ongoing medical monitoring and treatment.

Defendant has not demonstrated that his medical issues and needs are comparable to the defendants in *Nellum* and *Carmona-Rodriguez*.  He only asserts that his medicine must be administered at certain times and that he must adhere to a healthy diet.  There is no basis for the Court to presume that the BOP cannot adequately meet these needs regardless of the length of his sentence.  Therefore, the Court is not persuaded that it should give Defendant's medical condition and needs significant weight under subsection (a)(2)(D).

### v.   Miscellaneous

Defendant lists the following factors without argument but with citation to case law: 1) sentences that are too long promote contempt rather than respect for the law; 2) the goal of rehabilitation is better served if the sentence is not so long that a defendant has nothing to look forward to beyond imprisonment; 3) lengthy incarcerations are very costly to taxpayers; and 4) the abolition of parole and virtual disappearance of the use of pardon, commutation and clemency render Guideline sentences particularly cruel and unjust.

The first two factors merely mirror the obligation §3553(a) already imposes on the Court to impose a sentence which is "sufficient, but not greater than necessary" to accomplish the §3553(a) objectives.  And, the last two factors are not relevant under any §3553(a) factor.

### III.   CONCLUSION

15

The Court will depart from the originally calculated range of 84-105 months, to a Guideline range of 37-46 months (19, III).  The Court has also considered the appropriateness of a variance under §3553(a) based on Defendant's family challenges during his youth and the significant disparity between the sentence Defendant faces here and what he would have faced in state court.  A sentence of 30 months is sufficient to meet each of the objectives in §3553(a)(2).


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 9, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 9, 2007.

S/Carol A. Pinegar
Deputy Clerk

16